**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **1:11-CR-00026-LJO** |
| Plaintiff-Respondent, | **ORDER ON 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE (Doc. 558)** |
| v. | |
| **JAYSON PETER COSTA,** | |
| Defendant-Petitioner. | |

**I. INTRODUCTION**

Jayson Peter Costa ("Petitioner"), a prisoner in federal custody, brings a pro se 28 U.S.C. § 2255 motion ("§ 2255 motion") to vacate, set aside, or correct his sentence. For the reasons discussed below, the Court DENIES Petitioner's motion.

**II. BACKGROUND OF THE CASE**

On January 13, 2011, Petitioner, along with nine co-defendants, was indicted on charges of conspiracy to commit mail fraud, wire fraud, and bank fraud in violation of 18 U.S.C. § 1349, mail fraud in violation of 18 U.S.C. § 1341, bank fraud in violation of 18 U.S.C. § 1344, and conspiracy to launder

money in violation of 18 U.S.C. § 1956(h). Indictment as to Jayson Peter Costa, Doc. 1. In total, Petitioner was indicted on 46 counts. *Id.* On November 1, 2013, Petitioner signed a plea agreement with the Government, wherein he agreed to plead guilty to Count One of the Indictment. Mem. of Plea Agreement ("Plea Agreement"), Doc. 234 at 11. Petitioner waived his right to trial as well as to appeal and other post-conviction remedies. *Id.* at 4-5. Charges on the forty-five other related counts were dismissed in consideration of this agreement. *Id.* at 11. The government agreed to recommend that the Petitioner's base offense level was seven, plus 22 levels associated with the size and sophistication of the criminal activities, but also agreed to a three level reduction if Petitioner accepted responsibility for his conduct. *Id.* at 10-11. The agreement describes that the maximum potential sentence Petitioner might receive is thirty years. *Id.* at 15.

In a Change of Plea Hearing on November 7, 2013, the Court asked Petitioner how he wished to plead to the following crimes:

> To execute a scheme and artifice to defraud mortgage lending companies and federally insured lending/financial institutions, collectively referred to as lenders, of money and property and to obtain money and property from such Lenders by means of materially false and fraudulent pretenses, representations and promises; and to cause the United States mail and commercial carriers to be used in execution of the scheme to defraud, in violation of Title 18 of the United States Code section 1341; and also to cause signs and signals to be transmitted by means of wire and radio communications in interstate commerce in furtherance of the scheme to defraud, in violation of Title 18 United States Code section 1343.
>
> And to defraud financial institutions and to obtain monies, funds, assets, and other properties under the custody and control of a financial institution by means of material false and fraudulent pretenses, representations, and promises in violation of Title 18 United States Code Section 1344, all in violation of Title 18 of the United States Code section 1349.

Transcript of Change of Plea Hearing ("Plea Change Hearing"), Doc. 283, 8-9. To this question, Petitioner responded, "Guilty, your Honor." *Id.* at 9.

Prior to sentencing, Petitioner submitted a letter to the Court in which he stated: "I Have [sic.] never denied my involvement with Crisp & Cole. . . . I fully have and always will take full responsibility

for my actions and involvement in this case." Def. Sentencing Memoranda Ex. A, Doc. 380-1.

At sentencing on February 24, 2014, the Court found the applicable offense level to be 26, with a Criminal History Category of "III" and a sentencing range of 78 to 97 months, "with a recommendation at the low end." Transcript of Sentencing Hearing ("Sentencing Hearing"), Doc. 572 at 3. The Court sentenced Petitioner to 78 months. *Id.* at 9.

On March 30, 2015, Petitioner filed the instant motion to "vacate, set aside and/or correct sentence, judgment conviction, plea & plea agreement pursuant to 28 U.S.C. § 2255." Habeas Motion, Doc. 558. Petitioner claims that his counsel was ineffective because he failed to investigate and argue certain matters in connection with his sentencing (ground one). Habeas Motion at 14. Petitioner also argues that the Court erred by not departing downward under United States Sentencing Guideline ("USSG") §§ 5K1.1 and 5K2.16 and by relying on restitution calculations based on the contents of his plea agreement (grounds two and three). *Id.* at 5-7. Petitioner requests an evidentiary hearing. *Id.* at 18.

Upon request by this Court, Doc. 564, the government filed an opposition. Government's Opp'n to Def.'s 28 U.S.C. § 2255 Motion ("Opposition"), Doc. 584. The government argues that the record refutes Petitioner's allegations and that Petitioner's claims are procedurally defective. *Id.*

### III. STANDARD OF REVIEW

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a movant must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete

miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

An evidentiary hearing may be required "[w]here section 2255 motions have been based on alleged occurrences outside the record." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) (internal citations and quotations omitted). No hearing is required, however, if "the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record." *Id.* Ultimately, "Section 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for presentation of the relevant facts." *Id.*

## IV. ANALYSIS

### A. Procedural Issues

#### 1. Waiver

The government argues that Petitioner waived his right to appeal and to post-conviction proceedings, including relief under § 2255, in his Plea Agreement. Opposition at 9-12. A plea agreement is a contract and subject to contract law standards. *United States v. Trapp*, 257 F.3d 1053, 1056 (9th Cir. 2001). In a plea agreement, a Petitioner may waive his right to file a motion for relief under 28 U.S.C. § 2255 if done so expressly. *United States v. Nunez*, 223 F.3d 956, 959 (9th Cir. 2000); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994). The right to collaterally attack a judgment of conviction pursuant to § 2255 is statutory, and a knowing and voluntary waiver of a statutory right is enforceable; *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.1993); *see also United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990) ("[I]t is not a due process violation for a Petitioner to waive, in an otherwise valid plea agreement, the statutory right of appeal."). Further, "[a]n unconditional guilty plea waives all non-jurisdictional defenses and cures all antecedent constitutional defects, allowing only an attack on the voluntary and intelligent character of the plea." *United States v. Brizan*, 709 F.3d 864, 866-67 (9th Cir. 2013). An appeal waiver may not be enforced "if the district court failed to comply with Federal Rule of Criminal Procedure 11, the court informed the Petitioner that she retained the right to appeal, the sentence did not comport with the terms of the plea agreement, or the sentence violated the

law. *Id.* at 866 (citing *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007)).

Here, Petitioner expressly waived both his right to appeal and his right to collaterally attack his sentence pursuant to 28 U.S.C. § 2255. Plea Agreement at 4-5. Petitioner does not dispute that he waived these rights. Nor does Petitioner argue that the Court did not comply with Rule 11, that the sentence did not comport with the terms of the plea agreement or that the sentence violated the law. Rather, the bulk of Petitioner's argument is that there were errors in the Government's loss calculations and that the Court should have given greater weight to his cooperation with state administrative agency investigations. Habeas Motion at 14. These claims do not invoke due process issues and can be waived. *Brizan*, 709 F.3d at 866-67. For these reasons, the Court finds that Petitioner effectively waived his sentencing claims (grounds two & three).

While Petitioner does not explicitly claim that his guilty plea was involuntary, he does allege facts that suggest his plea was not "knowing." Habeas Motion at 17, ¶ 12 (discussing how changes to different versions of the plea agreement were not brought to his attention and were "subtle" and "meant to deceive him."). Because Petitioner is pro se, the Court construes his pleadings liberally and will treat his claims as alleging that ineffective assistance of counsel critically undermined the knowing and voluntary nature of his plea. Such a claim cannot be waived.

## 2. **Procedural Default**

The government also argues that Petitioner's claims are procedurally deficient because he is raising them for the first time in a 2255 motion, rather than on direct appeal. Opposition at 12-14. Petitioner acknowledges that he never filed a direct appeal in this case. Habeas Motion at 17. It is well settled that "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotations omitted). "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Id.* This rule, however, "is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important

interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Thus, there are judicially created exceptions to it.

One such exception allows a criminal defendant to bring ineffective assistance of counsel claims under § 2255. *Massaro*, 538 U.S. 500 at 506 ("Subjecting ineffective-assistance claims to the usual cause-and-prejudice rule also would create perverse incentives for counsel on direct appeal."); *United States v. Braswell*, 501 F.3d 1147, 1150 n.1 (9th Cir. 2007) (noting that the Supreme Court excludes ineffective assistance of counsel claims from the cause and prejudice requirement.). Thus, Petitioner's ineffective assistance claim is not procedurally defaulted.

**B.     Ineffective Assistance of Counsel Claims**

  **1.     Legal Background**

The Sixth Amendment guarantees "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). Ineffective assistance of counsel claims are analyzed under the framework set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Ross v. Stewart*, 32 F. App'x 227, 228-29 (9th Cir. 2002). In *Strickland,* the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." 466 U.S. at 694. Establishing "deficient performance" requires the movant to show that counsel made errors so serious that she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. "Deficient performance" means representation that "fell below an objective standard of reasonableness." *Stanley v. Cullen,* 633 F.3d 852, 862 (9th Cir. 2011) (citing *Strickland,* 466 U.S. at 688). To demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter,* 562 U.S. 86 (2011) (quoting *Strickland*, 466 U.S. at 693). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the movant as a result of the alleged deficiencies. *Strickland,* 466 U.S. at 697.

"[T]he two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). "Where . . . a Petitioner is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *United States v. Lopez*, 182 F.3d 929 (9th Cir. 1999) (quoting *McMann*, 397 U.S. at 771. "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill,* 474 U.S. at 59. "In other words, in order to satisfy the 'prejudice' requirement, the Petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59.

### 2.     <u>Failure to Investigate Alleged Errors in Loss Calculation</u>

Petitioner alleges that his attorney failed to investigate certain matters pertaining to his case. Habeas Motion, Ex. A, ¶¶ 1-9. For example, he claims that his attorney failed to verify the identity of the victims and their estimated losses, to verify whether loans were sold on the secondary market, and otherwise validate the Government's loss calculations. *Id.* In support of this argument, he submits his own declaration, in which he claims that many of the loans were paid-in-full by his co-defendants or were offset by credit bids- and therefore that actual losses were substantially less than what is represented in the government's loss calculations. Habeas Motion Ex. 1Z, Doc. 558 at 121-50.

This argument fails because Petitioner does not show that he was prejudiced by his attorney's performance. In guilty plea cases, when the error of counsel is the failure to investigate, the prejudice inquiry depends on the "likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59. "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Id.* Petitioner does not allege, or point to any evidence that would lead this court to believe that he would not have plead guilty if his attorney had discovered any of these alleged errors. In fact, Petitioner admits that he

"did not wish to go to trial" and that his "admittance of this conspiracy and [his] involvement in it has been documented since 2005." Habeas Motion, Ex. A, Doc. 558 at 16.

Moreover, he cannot show he was prejudiced because he cannot show that it would have been rational for him to reject the plea offered. Petitioner faced up to 360 months of prison time. Plea Change Hearing at 4. His attorney negotiated a deal under which the government agreed to recommend an offense level of 29, with a three level reduction for acceptance of responsibility. Plea Agreement at 10-11. Ultimately, he was sentenced to 78 months. Had Petitioner rejected this offer and been convicted he would not have been eligible for the three-level reduction of responsibility. Petitioner challenges the loss calculations associated with twenty-five properties. Habeas Motion, Ex. 1Z. But, even if *all* of these challenges are accurate, Petitioner would *still* be on the hook for more than six million dollars in losses, according to the Court's estimates.[1] While this would have dropped his offense level down by two, this would not have made up for the three levels offered to him for acceptance of responsibility. Moreover, he would have faced exposure to the forty-five other additional counts for which he was indicted, but were dismissed under the terms of his plea. Plea Agreement at 11. Thus, while Petitioner may not be happy with the terms of the Plea Agreement, there is no indication that leads the Court to reasonably believe that but for his attorney's alleged errors, he would have gone to trial and received a more favorable outcome. *See United States v. Astorga*, 457 F. App'x 698, 700 (9th Cir. 2011) (finding no prejudice where defendant pled guilty and received sentence of 70 months, but faced 120 months if case went to trial). Therefore, the Court DENIES Petitioner's motion for relief due to his attorney's alleged failure to investigate. Because the Court relied on evidence in the record in coming to this conclusion, no evidentiary hearing was required. *Shah*, 878 F.2d at 1158.

### 3. <u>Failure to Obtain Better Terms in the Plea Agreement</u>

Petitioner argues that his attorney was ineffective because the plea agreement contained terms

---

[1] Based on figures presented as loss calculations in Habeas Motion Ex. 1C, at 32.

8

unfavorable to him, and of which he was not made aware. Habeas Motion Ex. A ¶¶ 10-13. Petitioner alleges that he was not aware of the money judgment in the agreement, the enhancement for sophisticated means, or that the government was free to request the entire guideline range (rather than just the "low end"). *Id.* at ¶ 10-12. He also argues that that his plea agreement should have included a departure under § 5K1.1 or § 5K2.16. *Id.*

Petitioner's allegation that he was unaware of certain terms of the plea agreement is contradicted by the evidence in the record. At his Plea Change Hearing, Petitioner affirmed that he had reviewed "the entire document" and gone over it with his lawyer, and that he had no more questions on it. Plea Change Hearing at 4. When asked again by the Court if he had "any questions at all," or if there was "any reason the Court should not accept the change of plea," Petitioner answered: "No, your Honor." *Id.* at 6. There is a "strong presumption" of truthfulness afforded to "solemn declarations made in open court." *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986). Further, his attorney testified that he discussed the plea agreement over the phone and via email with Petitioner, and specifically addressed the sophisticated means enhancement. Garland Decl. ¶¶ 15-16. Garland also forwarded an email to Petitioner from the Government that bullet pointed certain aspects of the plea deal, including the enhancement and the fact that the Government would be able to recommend that he be sentenced "within the applicable guideline range." Garland Decl., Ex. E. In light of the record on this issue, the Court finds Petitioner's claim that he was unaware of the terms of his plea agreement to be without merit. *See Doe v. Woodford*, 508 F.3d 563, 572 (9th Cir. 2007) ("We have no doubt that the decision to plead guilty is a difficult one for many Petitioners, but the fact that one struggles with the decision, and might later even come to regret it, does not render it coerced."). The record conclusively shows that the only evidence supporting Petitioner's claims is Petitioner's own statement.

Petitioner's argument that his attorney failed to "ask for" sentencing departures pursuant to United States Sentencing Guideline Section 5K1.1 or 5K2.16 is also unavailing. Habeas Motion Ex. A ¶ 13. According to his attorney, the Government was not interested in a cooperative agreement because

they had the evidence they needed. Garland Decl. ¶ 5. Nevertheless, a § 5K1.1 departure was included in their second offer. Habeas Motion Ex. 1P, 98 -100. Petitioner rejected this offer because he was unhappy with other terms it included. Garland Decl. ¶ 12. The government refused to include a § 5K1.1 departure in its third offer. *Id.* at ¶ 14. This evidence reflects that the Government had increased leverage at this point in the negotiations; not that his attorney was ineffective. Thus, Petitioner fails to demonstrate that his attorney's failure to obtain better terms is a result of a failure to perform "within the range of competence demanded of attorneys in criminal cases." *Lopez*, 182 F.3d at 929.

For these reasons, the Court DENIES Petitioner's motion for relief due to his attorney's alleged failure to obtain better terms for his plea agreement. Because this Court finds Petitioner's testimony is not credible, no hearing was required on this matter. *Shah,* 878 F.2d at1159 (9th Cir. 1989) ("We have recognized that where the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record, no evidentiary hearing is required.") (internal quotations omitted).

### C.     Certificate of Appealability

A Petitioner cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a Petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the Court has dismissed a § 2255 motion (or claims within a § 2255 motion) on procedural grounds, a Petitioner must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the Court has denied a § 2255 motion or claims within the motion on the merits, a Petitioner must show that reasonable jurists would find the Court's decision on the merits to be debatable or wrong. *Id*. The Court finds that Petitioner has not made any showing, let alone a substantial one, of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Court further finds that reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong.

*Slack*, 529 U.S. at 483. Accordingly, the Court declines to issue a certificate of appealability.

## V. CONCLUSION AND ORDER

For the reason discussed above, this Court DENIES Petitioner's § 2255 motion to vacate, set aside, or correct his sentence. The Court also DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

    Dated: __October 7, 2015__               __/s/ Lawrence J. O'Neill__
                                                                     UNITED STATES DISTRICT JUDGE